UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHERIE ELIZABETH CARBONE,

    Plaintiff,

v.                                                                    Case No:   6:16-cv-682-Orl-41TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Cherie Elizabeth Carbone appeals to this Court from the Commissioner of Social Security's final decision to deny her applications for disability insurance benefits and supplemental security income. I have reviewed the record, including the administrative law judge's ("ALJ") decision, the exhibits, and the joint memorandum submitted by the parties. For the following reasons, I respectfully recommend that the Commissioner's final decision be **affirmed**.

### I. Background[1]

Plaintiff applied for benefits on February 9, 2011, alleging a disability onset date of November 18, 2010[2] (Tr. 345-351, 354-363, 405). Her claims were denied at the initial level and on reconsideration (Tr. 140-41, 164-67). At her request, an ALJ conducted an administrative hearing on May 16, 2013 and issued an unfavorable decision on June 5,

---

[1] The information in this section comes from the parties' joint memorandum filed on December 2, 2016 (Doc. 15).

[2] Although Plaintiff alleged an onset date of November 18, 2010 in her disability applications, a June 2, 2008 appears throughout the record. The October 2015 administrative decision notes that Plaintiff's alleged onset date was June 2, 2008 (Tr. 20).

2013 (Tr. 83-100, 168- 186, 216-217). The Appeals Council granted Plaintiff's petition for review of the ALJ's decision, vacated the June 2013 decision, and remanded the case for further administrative proceedings (Tr. 187-190).

A second administrative hearing was held on August 28, 2015 (Tr. 36-76). Plaintiff was forty-four years old, with a general education diploma, when the second ALJ issued his unfavorable decision on October 2, 2015 (Tr. 15-35, 345). On March 1, 2016, the Appeals Council denied Plaintiff's request for review of the second decision (Tr. 1-7). Thus, the second ALJ's October 2015 decision is the Commissioner's final decision and this appeal timely followed (Doc. 1). Plaintiff has exhausted her administrative remedies and her case is ripe for review.

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the Commissioner's five-step sequential evaluation process set out in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The evaluation process requires the ALJ to determine whether the claimant: (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and at step five, the burden shifts to the Commissioner. Id., at 1241 n.10; Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since her June 2, 2008 alleged onset date (Tr. 20). At step two, the ALJ

found Plaintiff had the following severe impairments: history of motor vehicle accident with pain in cervical and lumbar spine with history of back strain; COPD; and atypical chest and abdominal pain (Tr. 20-21). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926) (Tr. 21-23). Before proceeding to step four, the ALJ decided that Plaintiff had the residual functional capacity ("RFC") to,

> [P]erform sedentary work 416.967(a) except: she can sit up to two hours in an eight hour workday, stand and walk thirty minutes at a time for two hours out of an eight hour workday; must avoid concentrated exposure to heat, cold, humidity and pulmonary irritants; with no exposure to unprotected heights, heavy equipment or workplace hazards; can occasionally climb stairs provided they have railing; can occasionally kneel, crouch and balance; can crawl less than occasionally but not never; can stoop and use her hands and arms frequently; can climb no ladders, ropes or scaffolds; can drive to and from a location in her own car by herself but driving in an occupation is restricted. She has no limits on vibration or reaching. She is limited to simple, repetitive, unskilled tasks; can perform unskilled work; can respond appropriately to supervisors, coworkers and work situations but can have only occasional contact with supervisors and coworkers. She can have no contact with the general public. She can have occasional changes in the work setting and can work two hours at a time during an eight hour workday with ordinary breaks.

(Tr. 23-27). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work (Tr. 27). But, the ALJ ultimately concluded at step five that there were other jobs in the national economy, including hand packager, assembler, stuffer, inspector, hand mounter, and lacquerer, that Plaintiff could perform and therefore, she was not disabled (Tr. 27-28).

### III. Standard of Review

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

### IV. Discussion

#### A. The ALJ Properly Considered Dr. Huthwaite's Opinion

Plaintiff has a history of anxiety, panic attacks and social difficulties (Tr. 661-662, 671-676, 684, 829, 832). On March 18, 2015, at the Commissioner's request, Plaintiff

presented to Justin Huthwaite, Psy.D. for a consultative psychological evaluation (Doc. 15 at 7).The first issue stated in the parties' joint memorandum is whether the ALJ properly considered Dr. Huthwaite's opinion (Doc. 15 at 11). After meeting with Plaintiff, Dr. Huthwaite opined that Plaintiff:

> [I]s capable of understanding and carrying out simple and some complex instructions. Her ability to attend to information appears mildly variable, but she appears able to learn and to recall information with cueing. Long-term memory functioning appears intact. [Plaintiff] appears able to communicate adequately with others and does not appear to be at high risk for aggression toward others at the present time. **If employed, she appears capable of working at an adequate pace, is at risk for not persisting with tasks secondary to her anxiety, and would benefit from intermittent supervision. She is at moderate to high risk for experiencing difficulty adapting to work-related stress given her psychiatric difficulties**. [Plaintiff] appears able to manage disability funds, if awarded.

(Tr. 1054) (emphasis added.). The ALJ gave Dr. Huthwaite's opinion "great weight," and decided that Plaintiff was "limited to simple, repetitive, unskilled talks [sic] with no contact with the general public and only occasional contact with supervisors and coworkers." (Tr. 25).

Plaintiff argues that the ALJ erred by failing to incorporate Dr. Huthwaite's opinion that she was "at risk for not persisting with tasks secondary to her anxiety, and would benefit from intermittent supervision. She is at moderate to high risk for experiencing difficulty adapting to work-related stress given her psychiatric difficulties" into Plaintiff's RFC (Id.).

A claimant's RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also 20 CFR § 416.945. In other words, a

claimant's RFC is "the most a claimant can still do despite [her] limitations." Lacina v. Comm'r Soc. Sec., 606 F. App'x 520, 526 (11th Cir. 2015) (quoting 20 C.F.R. § 416.945(a)(1)); Sanchez v. Comm'r Soc. Sec., 507 F. App'x 855, 858 (11th Cir. 2013); McCrea v. Astrue, 407 F. App'x 394, 396 n.2 (11th Cir. 2011); Davis v. Comm'r of Soc. Sec., No. 6:12-cv-1694-Orl-36TBS, 2013 WL 6182235, at *5 (M.D. Fla. Nov. 25, 2013). The RFC determination "is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing Lewis, 125 F.3d at1440). The ALJ is not required to use magic words in a claimant's RFC assessment and "there is no requirement that the ALJ include every limitation verbatim into her RFC determination[.]" Hilton v. Comm'r Soc. Sec., Case No. 6:14-cv-1339-Orl-GJK, 2016 WL 561364, at *3 (M.D. Fla. Feb. 12, 2016); Billups v. Colvin, No. 2:12-cv-815-TFM, 2013 WL 6840383, at *8 (M.D. Ala. Dec. 27, 2013).

Dr. Huthwaite's opinion that Plaintiff would benefit from "intermittent supervision" is not a limitation on her ability to do work. It is a suggestion for how to improve her job performance. Therefore, there was no reason for the ALJ to include this opinion in Plaintiff's RFC assessment. The ALJ adequately addressed Dr. Huthwaite's concern that Plaintiff "is at moderate to high risk for experiencing difficulty adapting to work-related stress given her psychiatric difficulties" by limiting her "to simple, repetitive, unskilled talks [sic] with no contact with the general public and only occasional contact with supervisors and coworkers" (Tr. 25). And, contrary to Plaintiff's suggestion, Dr. Huthwaite did not opine that she could never have changes in her work setting. Thus, the RFC assigned by the ALJ does not contradict the record evidence.

Although it is a separate issue, Plaintiff also complains about a ruling the ALJ made during the administrative hearing. On direct examination, the vocational expert testified that "stuffer" was a job someone with Plaintiff's RFC could perform (Tr. 70-71). On cross-examination, Plaintiff's attorney asked the vocational expert for a brief description of what a stuffer does (Tr. 71-72). Then the following took place:

> Attorney: Well, I'm just curious because we do have a limitation against heavy or hazardous machinery, so I'm trying to figure out if --
>
> Witness: I don't think the --
>
> Attorney: --whether or not that, whether or not that would run afoul of that.
>
> Witness: According to the DOT, I'm certain that it would not be. There are all kinds of - I mean, there are safety issues that have to be addressed by manufacturers of machines. It's not like you're walking in a - an unprotected area near a machine where you could fall in or something like that. But I, I can give another example if --
>
> ALJ: Let's, lets just answer the rest of the question and then we can go back to that, okay?
>
> Witness: It just says tends machine that blows filler into stuffed toy shells. You insert precut wire into the shell, place the shell over - opening over a stuffing - with a - you're using a nozzle, essentially. It's not like you're a sewing machine where you'd even have to worry about a needle puncture or something like that.
>
> Attorney: Okay, but based on what you just listed, it sounds like there's three or four, shall we say, micro tasks involved in that job? You're doing - you're laying the -
>
> ALJ: **It's unskilled, Counsel, SVP: 2, all right? I'm not going to even let her answer. She just said these meet the standards of unskilled SVP: 2 jobs. That's pretty simple. I mean, you know.**
>
> Attorney: You're not -

> ALJ: I don't know what you're looking at it that – I mean, it's not
> a complex and detailed task. It's a simple task. All right.
> Continue, please, Ms. Colvin-Roberson.

(Tr. 72-73) (emphasis added.).

Social Security Regulation 85-15 (SSR 85-15) provides that "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job." 1985 WL 56857 at *6. Plaintiff argues that this is what her attorney was trying to convey when the ALJ arbitrarily cut off this line of questioning of the vocational expert (Doc. 15 at 14). First, it is not clear from the record whether this is in fact what Plaintiff's counsel was attempting to show when questioning the vocational expert. Early in this line of questioning, the attorney said he was "curious because we do have a limitation against heavy or hazardous machinery." That may well have been where the examination was going, we just don't know. Second, while I would have permitted the line of inquiry had I been the presider, any error by the ALJ is harmless because even if the job of stuffer is eliminated, the vocational expert identified other jobs, including hand packager, assembler and inspector that Plaintiff could perform (Tr. 70-71).

B. <u>The ALJ Properly Considered Plaintiff's Subjective Complaints of Pain</u>

The remaining issue is whether the ALJ properly considered Plaintiff's subjective complaints about her condition (Tr. 15 at 19-22). In the Eleventh Circuit, "[i]n order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be

expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); Singleton v. Comm'r Soc. Sec., No. 6:12-cv-683-Orl-GJK, 2013 WL 5236678, at *5 (M.D. Fla. Sept. 17, 2013). This pain standard applies to complaints of subjective conditions other than pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). A claimant's subjective testimony, supported by medical evidence that satisfies the pain standard, is itself sufficient to support a finding of disability. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987). "If the ALJ discredits subjective testimony, [s]he must articulate explicit and adequate reasons for doing so." Wilson, 284 F. 3d at 1225.

In this case, the ALJ found that Plaintiff's:

> [M]edically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of those symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 26). Plaintiff concedes that the ALJ provided reasons for this determination but argues those reasons are "insufficient and not supported by substantial evidence" (Doc. 15 at 20).

The ALJ relied on the opinion of Michael Shea, Ph.D. and Todd Bennett[3] that Plaintiff's impairments only affected her ability to engage in social interactions (Tr. 26). In response, Plaintiff cites the part of SSR 85-15 where the Commissioner states:

> Where a person's only impairment is mental, is not of listing severity, but does prevent the person from meeting the mental demands of past relevant work and prevents the transferability of acquired work skills, the final consideration is whether the person can be expected to perform unskilled work. The basic mental demands of competitive, remunerative, unskilled work

---

[3] Todd Bennett, M.S., is a clinician at the Center for Assessment and Treatment, A New Jersey Non-Profit Corporation (Tr. 854-911).

> include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

1985 WL 56857, at *4. Based on this citation, Plaintiff concludes that "[t]he ALJ's reason for rejecting [Plaintiff's] testimony regarding her limitations is insufficient and not supported by substantial evidence." (Doc. 15 at 20).

Plaintiff also argues that the ALJ cherry-picked the record, by disregarding evidence contrary to the finding he made (Doc. 15 at 20-21). Specifically, Plaintiff observes that the ALJ mentioned Dr. Shea and Mr. Bennett's opinion that Plaintiff's "symptoms do not necessarily preclude work," but omitted their opinion that Plaintiff's "symptoms began to increase in terms of intensity and duration," and that they did not believe Plaintiff was malingering (Tr. 24; Doc. 15, 20-21).

Plaintiff's arguments are not persuasive. As the ALJ noted in his decision, Dr. Shea and Mr. Bennett reported that "no limitations in understand [sic] and memory, sustained concentration and persistence, and adaption were noted." (Tr. 24). While it is true that at one point Dr. Shea and Mr. Bennett said they did not believe Plaintiff was malingering, at another point, as noted by the ALJ, Mr. Bennett opined that Plaintiff's "responses reflected non-credible reporting and exaggeration." (Tr. 26). It was up to the ALJ as trier of the facts to decide what weight to give these opinions. The fact that the ALJ chose to refer to one but not the other opinion is not persuasive proof that the ALJ cherry-picked the record.

- 10 -

Plaintiff notes that one of the reasons the ALJ gave for discounting her credibility is that she "reported activities that are inconsistent with a finding of disability." (Tr. 26). The ALJ observed that Plaintiff prepares "simple meals, does laundry, drives, grocery shops, manages her finances and takes care of her children." (Tr. 26-27). Plaintiff argues the decision in Lewis, where the court said it did not believe "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability …."125 F.3d at 1441.

The ALJ found, and Plaintiff has not disputed, there her reported activities of daily living are inconsistent with her allegations of disability. This is evidence to show that the claimant's condition is not as limiting as she alleges. Combined with the other evidence cited by the ALJ, this is substantial evidence to support the Commissioner's decision.

It is clear from the ALJ's decision that he relied on significantly more evidence than the opinions of Dr. Shea and Mr. Bennett and Plaintiff's activities of daily living to assess Plaintiff's credibility (Tr. 23-27). The ALJ made his credibility determination based on an assessment of *all* of the record evidence, including diagnostic test results, activities of daily living, and medical opinions of the various physicians who rendered evaluations in the case including: the opinions of state agency psychiatrist Alexander Golin, M.D.; primary care physician, Leonard A Feitell M.D.; Dr. Shea and Mr. Bennett; nurse practitioner, Maria Reid; Yogesh Goswami, M.D.; Calvin Vanderplate, Ph.D.; Dr. Huthwaite; Charles Scott, M.D.; and Allan R. Goldstein, M.D. (Tr. 24-27).

Lastly, assuming arguendo, that the ALJ's reasons for discounting Plaintiff's credibility were insufficient (a position with which I do not agree), Plaintiff has not shown

how a positive credibility determination would have changed the ALJ's RFC determination.

Given the weight of the record evidence, I conclude that the ALJ's adverse credibility determination is supported by substantial evidence and respectfully recommend that the district judge reject Plaintiff's argument on this point.

## V. Recommendation

Upon consideration of the foregoing, I respectfully recommend that the Commissioner's final decision in this case be **AFFIRMED,** and that the Clerk be directed to enter judgment accordingly and **CLOSE** the file.

## VI. Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. <u>See</u> 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on March 3, 2017.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding District Judge
    Counsel of Record